UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARNOLD LEE ERICKSON, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No.  4:20 CV 34 JMB |
| NATIONSTAR MORTGAGE, LLC, | ) |
| Defendant/Counterclaim Plaintiff/Third-Party Plaintiff, | ) |
| v. | ) |
| ERICKSON CABIN, LLC, Third-Party Defendant/ Third-Party Plaintiff,, | ) |
| v. | ) |
| BUSEY BANK, et al., | ) |
| Third-Party Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Busey parties'[1] motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., on the claim of Erickson Cabin, LLC, for slander of title. Erickson Cabin has filed a response in opposition and the issues are fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

---

[1] "The Busey parties" consist of Busey Bank, and employees Garrett Bradley, retail loan service support supervisor, and Brian Schulte, retail loan payoff specialist.  Busey Statement of Uncontroverted Material Facts (Busey SUMF) at ¶¶ 13-15.  The members of Erickson Cabin, LLC, are plaintiffs Arnold Lee Erickson, Marilyn E. Erickson, Michael D. Erickson, and Julie M. Erickson (collectively, "the Erickson parties").  Id. at ¶ 11.

1

**I.     Background**

The claims in this matter concern title to real property located in Putnam County, Missouri. Arnold Erickson and Michael Erickson (father and son, respectively) purchased the property at issue in April 2006. Busey Statement of Uncontroverted Material Facts (Busey SUMF) at ¶ 6 [Doc. # 71]. In January 2007, Arnold and Michael executed a promissory note in the amount of $88,000 and a deed of trust giving Pulaski Bank (now known as Busey Bank)[2] a security interest in the property. Id. at ¶¶ 18-19, 22. The deed of trust was recorded on January 11, 2007. Id. at 21. Pulaski Bank subsequently assigned the note to Countrywide Bank. 2007 Note at 3 [Doc. # 71-4]; Michael Erickson Affidavit at ¶¶ 6-7 [Doc. # 86-1]. In 2013, servicing of the loan was transferred to Nationstar. Bank of America Notice [Doc. # 86-2].

In February 2018, attorney Ed Cox emailed Busey Bank seeking information regarding the deed of trust on behalf of a client who was attempting to execute a levy on the Erickson property.[3] Id. at ¶¶ 25-27; Brian Schulte Affidavit at ¶¶ 8-10 [Doc. # 73]; Cox email [Doc. # 73-1]. Included with the email was a lien search Mr. Cox obtained that listed the January 2007 deed of trust to Pulaski Bank as the sole lien on the property. Busey SUMF at ¶ 28; Schulte Affidavit at ¶ 11; Lien Search [Doc. # 73-1]. Mr. Cox wrote, "Prior to having the sheriff sell the property, I am requesting confirmation of this Deed of Trust and contact information for providing notice of any sale." Cox email.

The Cox email was forwarded to defendant Brian Schulte. He testified that he reviewed Busey Bank's "internal imaging" and completed a lien search but found no information regarding

---

[2] Pulaski Bank merged into Busey Bank in 2016. Busey SUMF at ¶ 22.

[3] Michael Erickson states that that a judgment creditor was planning to execute a levy and conduct a sheriff's sale on his half interest in the property. Michael Erickson Aff. at ¶ 10. Arnold filed a partition action against Michael to protect his own interest in the property. Id.

the Ericksons or the loan.[4]  Brian Schulte Deposition at 22 [Doc. # 86-6]; Schulte Affidavit at ¶ 12.  Based on the lack of records, he assumed that the 2006 loan had been paid off before Busey Bank acquired Pulaski Bank.  Schulte Dep. at 22 ("I did not find any loan.  And that's a good indication that the loan was paid off many years ago is what my experience was at the time in 2018.").[5]  Accordingly, Schulte called Mr. Cox and told him that Busey Bank did not have an active loan on the Erickson property.  Schulte Aff. at ¶ 16.  He also told Cox that Busey Bank did not require notice of any sheriff's sale of the property because it had no interests in the property.  Id. at ¶ 18.  Schulte offered Cox a deed of release as a substitute for service on Busey Bank, and Cox accepted.  Id. at ¶ 19.   Schulte then prepared a document entitled "Full Deed of Release," using a fill-in form.  Deed of Release [Doc. # 71-6]; Schulte Dep. at 23.

The completed deed of release identified the property and stated that the Ericksons "by Deed  of Trust dated January 6, 2007 . . . conveyed to the trustee therein named, certain real estate, to secure payment of a certain note or notes" as described in the deed of trust.   The deed of release then stated:

> NOW, THEREFORE, <u>the undersigned present holder and legal owner of said Deed of Trust and note or notes</u>, does hereby REMISE, RELEASE AND QUIT-CLAIM unto its present owner(s), ALL of the real estate in said Deed of Trust . . .
>
> TO HAVE AND TO HOLD the same, with all appurtenances thereto belonging, free, clear and discharged from the encumbrance of said Deed of Trust.

---

[4] It is not unusual that Schulte did not find any documentation of the Erickson loan. Garrett Bradley testified by affidavit that, when Busey Bank acquired Pulaski Bank, it did not retain records of Pulaski Bank loans and customer profiles that were older than seven years, as was the case with the Erickson loan.  Garrett Bradley Affidavit at ¶¶ 10-11 [Doc. # 72].

[5] Pulaski and Busey Banks had different approaches to their retail loan portfolios.  According to Garrett Bradley, Busey Bank owned and serviced its retail loan portfolio.  Bradley Dep. at 18.  By contrast, it was Pulaski Bank's practice to generate retail loans that it almost immediately sold in the third-party market to new lenders.  Bradley Aff. at ¶ 12.

3

Full Deed of Release [Doc. # 71-6] (emphasis added). It is undisputed that the underlined language was false, because Busey Bank was not the "present holder and legal owner" of the deed of trust and note. Schulte gave the deed of release to his supervisor, defendant Garrett Bradley, who signed it on February 21, 2018.[6] Id. The deed of release was recorded in Putnam County on March 15, 2018. Busey SUMF at ¶ 38.

Michael Erickson learned about the deed of release after it was recorded and, in April 2018, exchanged emails and phone calls with Schulte and Bradley.[7] Michael Erickson Aff. at ¶ 15. According to Schulte, Michael Erickson told him that Nationstar held a valid lien by virtue of the assignment of the note and deed of trust.[8] Schulte Aff. at 22-24; Schulte Dep. at 42. In response to this information, Schulte asked associates in Busey Bank's post-closing department if they could find any information regarding the Erickson loan. Schulte Dep. at 12-13. A search of the Mortgage Electronic Registration Systems (MERS) database confirmed that the Erickson loan had been sold.[9] Schulte Aff. at ¶¶ 25-26; Schulte Dep. at 13-14. Neither Schulte nor Bradley had much

---

[6] Bradley states that in the two-year period following Busey Bank's acquisition of Pulaski Bank, he reviewed and approved approximately 40 to 50 lien releases per week. Bradley Aff. at ¶ 17.

[7] He explained to Garrett Bradley that the full deed of release negatively affected his efforts to settle matters with his judgment creditor. Michael Erickson Aff. at ¶¶ 14, 17.

[8] Erickson also called Nationstar and asked for documentation regarding its legal authority to collect monthly payments, but it refused to provide proof that it owned either the promissory note or deed of trust. Michael Erickson Aff. at ¶¶ 15-16.

[9] MERS "establish[ed] a national electronic registry to track mortgages and subsequent assignments." Plymouth Cty., Iowa v. Merscorp, Inc., 774 F.3d 1155, 1157 (8th Cir. 2014). "MERS does not originate, assign, or service any mortgages, but instead charges a fee when members record or transfer a mortgage on the registry. Upon initial recording, mortgages are recorded with the county recorder and MERS becomes the mortgagee of record. With subsequent transfers, MERS remains the mortgagee of record in the county property records, but tracks the transfers for priority purposes on its registry. These transfers are not recorded with the county recorder in the county where the real property is located." Id.; see Deed of Trust ¶ E [Doc. # 1-1 at 67] (describing MERS as a nominee for Pulaski Bank and the beneficiary of the deed of trust).

4

familiarity with MERS and, before this matter arose, it was not the bank's practice to check the MERS database before signing a deed of release. Schulte Dep. at 10-11, 15-16; Bradley Dep. at 16-18. Schulte acknowledges that he would not have prepared the deed of release if he had known that Pulaski Bank sold the original promissory note. Schulte Dep. at 22.

On April 30, 2018, Schulte emailed Michael Erickson, confirming that a MERS inquiry disclosed that Nationstar was the current servicer of the mortgage. He continued, "We are not affiliated with Nationstar mortgage, so I assume that the deed of trust was not mine to release and that it is invalid. However, I will take whatever corrective action is necessary to maintain the integrity of Nationstar's lien." Apr. 30, 2018 email [Doc. # 73-3].

In June 2018, the Ericksons formed Erickson Cabin, LLC, for the purposes of holding title to the property. According to Michael Erickson, although he and his father Arnold purchased the property, the bulk of the costs were paid by a family business largely owned by their wives, Julie and Marilyn. Michael Erickson Aff. at ¶ 18. On July 18, 2018, Arnold and Michael conveyed the property to Erickson Cabin, LLC. [10] Id. at ¶ 20. Nationstar received payments on the loan through August 2018. Transaction History [Doc. # 18-7].

On March 15, 2019, Jody Martin, a title resolution specialist with the Martin Leigh law firm, contacted Brian Schulte regarding the release of deed. See Mar. 15, 2019, email string at 5 [Doc. # 86-8]. In response, Schulte prepared an Affidavit of Erroneous Deed of Release, based on a sample provided by Jody Martin. On March 20, 2019, Bradley executed the affidavit which was then recorded in Putnam County. Putnam County Record with Affidavit of Erroneous Release [Doc. # 71-7]. The document stated in relevant part:

> This Affidavit of Erroneous Release . . . is made for the pu[r]pose of rescinding and declaring null and void a Deed of Release executed . . . and recorded March 5, 2018

---

[10] Julie and Marilyn each hold a 49% interest in the LLC, while Arnold and Michael each own 1% of the LLC, mirroring their respective interests in the family business. Michael Erickson Aff. at ¶ 19.

5

> . . . . Said Deed of Release was accidentally and erroneously filed to release a Deed of Trust . . . on Property legally described as [the subject property].
>
> It was not the intent of the undersigned to release the Deed of Trust on said property, since the Deed of Trust Note and loan released to said Deed of Trust has not been paid and the release of said Deed of Trust was not authorized and was ineffective. The error made consists of:
>
> The loan secured by aforementioned Deed of Trust was sold by Pulaski Bank, now known as Busey Bank, to Nationstar Mortgage in the year 2007. Busey Bank held no ownership interest in the aforementioned Deed of Trust at the time the erroneous Full Deed of Release was recorded.
>
> The purpose of this document is to correct on the record the mistaken filing of the Full Deed of Release filed in . . . Putnam County, Missouri on March 5, 2018.

On May 1, 2019, Martin Leigh, acting as the successor trustee, provided notice of a trustee's sale, scheduled for May 30, 2019.[11] [Doc. # 86-4]. On May 1, 2019, Nationstar notified the Ericksons that the property would be sold at a trustee's sale on May 30, 2019. Amended Counterclaim and Crossclaim at ¶ 24. Thereafter, Nationstar listed the property on auction.com, a website advertising foreclosure auctions. Id. at ¶ 25.

On May 14, 2019, Erickson Cabin entered into a contract for sale of the property to prospective third-party purchasers, Charles and Jodee Sapper, for a purchase price of $125,000. Busey SUMF at ¶ 67. On July 30, 2019, the Sappers cancelled the purchase, stating that they "simply do not have any choice." July 30, 2019, email [Doc. # 86-5]. Their email explained:

> We understand your position that there was a release of the deed of trust on your property back in March 2018. But, the filings by Pulaski Bank, Busey Bank and/or NationStar in March and April of this year are deemed to be clouds in the title by the insurance carrier and closing agent and hence our lender. It's impossible for us to proceed.
>
> Id.

---

[11] Nationstar mailed a notice of the trustee's sale to the Ericksons' attorney. Erickson Cabin LLC's First Amended Crossclaim and Counterclaim at ¶ 24 [Doc. # 52].

6

On May 23, 2019, the Ericksons filed a petition for injunctive relief against defendant Nationstar in the Circuit Court of Putnam County to enjoin the May 30, 2019, trustee's sale.[12] Busey SUMF at ¶ 1. Nationstar filed a counterclaim against the Ericksons and a third-party petition against Erickson Cabin for declaratory judgment, to quiet title, and for suit on a promissory note.[13] [Doc. # 18]. Erickson Cabin, in turn, brought in the Busey parties, asserting the claim for slander of title that is the subject of the present summary judgment motion. [Doc. # 52]. Thereafter, the Busey Bank parties removed the matter to the Western District of Missouri, invoking jurisdiction based on diversity of citizenship. Notice of Removal [Doc. # 1]. Subsequently, venue was transferred to this Court by consent of the parties. Order [Doc. # 13]. The Busey parties now seek summary judgment, arguing that the evidence does not establish that they acted with malice or that Erickson Cabin sustained a pecuniary injury, as required to establish slander of title.

## II.     Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[12] A temporary restraining order was entered on May 24, 2019, and extended on June 5, 2019. See Docket entries [Doc. # 1-1 at 1-2]. On June 19, 2019, the circuit court entered a preliminary injunction enjoining foreclosure. Erickson Cabin's First Amended Crossclaim and Counterclaim at ¶¶ 30-32 [Doc. # 52].

[13] Nationstar's claims have been resolved through a consent judgment entered on May 12, 2021. [Doc. # 94].

party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

### III. Discussion

Erickson Cabin, LLC, claims that the Busey Bank parties slandered the title to the property by signing and recording the Full Deed of Release in March 2018. "A claim of slander of title requires the plaintiff to demonstrate: 1) some interest in the property, 2) that the words published were false, 3) that the words were maliciously published, and 4) that he suffered pecuniary loss or injury as a result of the false statement." Dumler v. Nationstar Mortg., LLC, 585 S.W.3d 343, 351 (Mo. Ct. App. 2019) (internal quotation, alteration, and citation omitted). It is undisputed that Erickson Cabin, LLC, had some interest in the property, thereby satisfying the first element, and that the Full Deed of Release falsely stated that Busey Bank was the "present holder and legal owner" of the deed of trust, satisfying the second element.

### A. Malicious Publication

8

An action for slander of title cannot exist without a malicious intent. Bechtle v. Adbar Co., L.C., 14 S.W.3d 725, 728 (Mo. Ct. App. 2000). Proof of falsity, alone, is not proof of malice. First Nat. Bank of St. Louis v. Ricon, Inc., 311 S.W.3d 857, 867 (Mo. Ct. App. 2010). To establish the existence of malice, plaintiff must provide evidence supporting "a reasonable inference that the representation not only was without legal justification or excuse, but also was not innocently or ignorantly made." Bechtle, 14 S.W.3d at 729. "Such inference may rest on a foundation of circumstantial evidence and proof of a lack of probable cause would support an inference that the representation was not innocently made out of stupidity or ignorance but was known to be false." Id.; see also First Nat. Bank of St. Louis v. Ricon, Inc., 311 S.W.3d 857, 868 n.3 (Mo. Ct. App. 2010) ("Malice in law imputes malice from 'the mere intentional doing of a wrongful act to the injury of another without legal justification or excuse.'") (citation omitted)). Where there is sufficient evidence or where there may be a fair difference of opinion on the issue of malice, the question whether the defendant in an action for slander of title was actuated by malice is one of fact for the jury. Bechtle, 14 S.W.3d at 729.

It is undisputed that the 2018 deed of release falsely stated that Busey Bank was the present holder and owner of the Erickson deed of trust and note. Busey Bank asserts that the error was the result of a mistake and not malice. Erickson Cabin suggests that malice can be inferred because (1) the Busey parties filed the deed of release in response to an inquiry by Edward Cox who was seeking to execute a levy of the property; (2) both Schulte and Bradley were aware of the MERS system but failed to check it before signing the deed of release; and (3) it took the Busey parties eleven months to correct the record after they learned that Nationstar had a valid lien, and then they acted at the request of the trustee seeking to foreclose on the property. This evidence,

9

Erickson Cabin asserts, is enough to support an inference of malice sufficient to defeat summary judgment.

Erickson Cabin has not made a persuasive argument that the Busey parties' actions taken <u>after</u> they learned that they had no authority to execute the deed of release support an inference that they acted with malice in executing the release in the first place. At no time did Schulte and Bradley attempt to conceal their mistake once it was brought to their attention. Indeed, defendant Schulte emailed Michael Erickson that he would "take whatever corrective action was necessary to maintain the integrity of Nationstar's lien." And, not only did Michael Erickson know that Nationstar had a lien on the property, the Ericksons continued to make mortgage payments for several more months, indicating that they believed that Nationstar's lien remained intact. Undoubtedly, it would have been better if the Busey parties had taken action to correct the record immediately, but neither their failure to act swiftly or the fact that they finally acted at the request of Nationstar's trustee is enough to impute malice in the preparation of the false release in the first instance.

Turning to the Busey parties' actions in drafting and executing the 2018 release, they have submitted evidence that the false representation that Busey Bank was "the present holder and legal owner of said Deed of Trust and note or notes" was "innocently made out of stupidity or ignorance." Bechtle, 14 S.W.3d at 729. The lien search provided by Mr. Cox listed only the 2006 Pulaski Bank loan and showed no other recorded interest in the property. A search of the bank's internal records failed to show any connection to the Ericksons or their property. Defendant Schulte testified that he concluded from this lack of evidence that the loan had been paid off. The fact that he was wrong in this assumption is not enough to establish malice. The Busey parties concede that a search of the MERS system would have disclosed that Nationstar held a lien on the

10

property, but both Schulte and Bradley testified that they were not particularly familiar with MERS before the Erickson matter arose and thus did not search the system as a matter of course.  Finally, Erickson Cabin has failed to connect the dots between the fact that the Busey parties took their actions in response to requests from Cox and Nationstar and any suggestion of malice.

The Court finds that Erickson Cabin had failed to present evidence that creates a genuine dispute of material fact regarding the existence of malicious intent.  See LaBruzzo v. Associated Press, 353 F. Supp. 979, 987 (W.D. Mo. 1973) (affirming summary judgment to defendant in libel action where there was "a complete absence of any indication that Friel had any suspicion of the falsity of the statements made by him, and there is a total lack of proof on plaintiff's part that Friel had before him any contra-indications as to the correctness of his story").

### B. Pecuniary Loss

Erickson Cabin is required to show it suffered a pecuniary loss or injury as a result of the Busey parties' false statement in the deed of release.  Dumler, 585 S.W.3d at 351.  Erickson Cabin relies on the Sappers' July 2019 refusal to complete the purchase of the property to satisfy this element.  According to the Sappers' email withdrawing from the deal, although the Ericksons told them that the deed of release was filed in 2018, "the filings . . . in March and April [2019]" were deemed to be clouds on the title, making it impossible for them to proceed with the purchase.  The filings the Sappers cited are the affidavit of erroneous release in March 2019 and the assignment of the deed of trust to Nationstar in April 2019.  Thus, the Sappers' withdrawal was not triggered by the false 2018 release but rather by the subsequent efforts to correct the record.  Erickson Cabin has failed to present evidence that creates a genuine dispute of material fact with respect to pecuniary loss.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendants Busey Bank, Garrett Bradley, and Brian Schulte for summary judgment [Doc. # 70] is **granted**.

A judgment in accordance with this Memorandum and Order will be separately entered this same date.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of May, 2021.